UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES PHANEUF, JOAN PHANEUF, JAMES SUSIENKA, and SHARON SUSIENKA,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC., PETER HINES, MICHAEL STOKES, ROBERT FERRY and TIMOTHY McKENDRY,<br><br>Defendants. | CIVIL ACTION NO. 99-40059 |

## MEMORANDUM IN SUPPORT OF DEFENDANT UNITED PARCEL SERVICE, INC.'S, MOTION TO DISMISS

### Introduction

This action arises out of plaintiffs James Phaneuf's ("Phaneuf") and James Susienka's ("Susienka") former employment by defendant United Parcel Service, Inc. ("UPS"). Phaneuf and Susienka contend that UPS discharged them in 1996 after they allegedly failed to provide UPS with false statements against their co-workers. They assert four and five counts respectively against UPS: false imprisonment (Counts I, II, and VIII); breach of implied covenant of good faith and fair dealing (Counts XIX and XX); wrongful termination in violation of public policy (Counts XXI and XXII); and violation of Massachusetts Civil Rights Act ("MCRA") (Counts XXVIII and XXIX). Plaintiffs Joan Phaneuf and Sharon Susienka allege claims for loss of consortium against UPS (Counts XI and XII). James Phaneuf and James Susienka also allege their state common law claims against Peter Hines, Michael Stokes, Robert Ferry and Timothy McKendry, all UPS employees.

Pursuant to Fed. R. Civ. P. 12(b)(6), UPS moves to dismiss plaintiffs' claims for breach of the implied covenant of good faith and fair dealing, wrongful termination in violation of public

policy, and violation of the Massachusetts Civil Rights Act for failure to state a claim upon which relief may be granted.

### Factual Allegations[1]

Susienka and Phaneuf were UPS employees. (Complaint ¶¶ 10-11). James Susienka is married to Sharon Susienka. (Complaint ¶ 2). James Phaneuf is married to Joan Phaneuf. (Complaint ¶ 4). Robert Ferry, Timothy McKendry, Michael Stokes, and Peter Hines are UPS employees. (Complaint ¶¶ 6-9).

On March 21, 1996, UPS required Susienka and Phaneuf to drive to a meeting at UPS's facility in Westwood, Massachusetts. (Complaint ¶ 12). UPS did not tell Susienka and Phaneuf the purpose of the Westwood meeting, and instructed them not to speak with anyone about the meeting. (Complaint ¶ 13). Upon arrival in Westwood, UPS allegedly told Susienka and Phaneuf not to speak with anyone, not to use the telephone or their beepers, and not to leave the area. (Complaint ¶ 14). UPS allegedly "confined" Susienka to the Westwood premises for nine hours and Phaneuf for eight hours. (Complaint ¶¶ 16-17).

During the alleged confinement, UPS allegedly interrogated Susienka and Phaneuf and "threatened, coerced, intimidated and attempted to force" them to provide false written statements against their co-workers. (Complaint ¶¶ 25-26). UPS allegedly attempted to coerce, intimidate, harass and threaten Susienka and Phaneuf with statements that UPS knew, or reasonably should have known, were false. (Complaint ¶¶ 27-28). Susienka and Phaneuf allegedly feared for their physical safety. (Complaint ¶¶ 55-56).

---

[1] For purposes of this motion only, UPS accepts as true all well-pled allegations in plaintiffs' Complaint, as is required by Rule 12(b)(6). In fact, UPS vigorously denies many of these allegations. If for any reason UPS's motion is denied, UPS reserves the right to contest the allegations of the Complaint.

On April 5, 1996, Ferry and McKendry met with Phaneuf. (Complaint ¶ 62). "Phaneuf was under the impression that he was not allowed and/or permitted to leave the interrogation room and that he was confined against his free will." (Complaint ¶ 64). During this alleged confinement, UPS again interrogated Phaneuf and "threatened, coerced, intimidated and attempted to force" him to provide false testimony against his co-workers. (Complaint ¶ 67). UPS again allegedly attempted to coerce, intimidate, harass and threaten Phaneuf with statements that UPS knew, or reasonably should have known, were false. (Complaint ¶ 70). Phaneuf again allegedly feared for his physical safety. (Complaint ¶ 79).

UPS allegedly discharged Susienka and Phaneuf in retaliation for their refusal to provide false written statements against their co-workers. (Complaint ¶¶ 82-83).

## Argument

I. THE STANDARD FOR DISMISSAL UNDER RULE 12(b)(6).

Dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted is proper when it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Plaintiff is required, however, to set forth in his complaint factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory. *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir. 1989). Bald, unsupported allegations alone will not survive a motion to dismiss for failure to state a claim upon which relief may be granted. *Dartmouth Review*, 889 F.2d at 16 (1st Cir. 1989). This standard is fatal to plaintiffs' claims against UPS.

II.     PLAINTIFFS' IMPLIED COVENANT CLAIM FAILS BECAUSE THEY CANNOT ALLEGE THAT UPS HAS DEPRIVED THEM OF ANY FUTURE COMPENSATION FOR PAST SERVICES.

James Susienka's and James Phaneuf's employment with UPS was at-will, and they do not allege otherwise. As such, their employment was "terminable by either the employee or the employer without notice, for almost any reason or no reason at all." *Jackson v. Action for Boston Community Dev.*, 403 Mass. 8, 9 (1988). Plaintiffs attempt to avoid this result by invoking an exception to this rule—the implied covenant of good faith and fair dealing—which prevents an employer from discharging an at-will employee to deprive the employee of compensation earned, but not yet received. *Fortune v. National Cash Register Co.*, 373 Mass. 96, 102 (1977) (discharge of salesman for purpose of depriving him of large commission earned yet not paid constitutes violation of implied covenant). To state a claim, plaintiffs must allege that their discharges deprived them of compensation for past services. *See King v. Driscoll*, 424 Mass. 1, 7 (1996) (no breach of the implied covenant of good faith and fair dealing when employee fails to present evidence that he was denied compensation for past services). Susienka and Phaneuf do not allege any such deprivation of compensation. *See* Complaint ¶¶ 160-67. Accordingly, their claims for breach of the implied covenant must be dismissed.

III.     PLAINTIFFS' WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY CLAIM FAILS BECAUSE IT DOES NOT IMPLICATE A WELL-DEFINED AND CLEARLY ESTABLISHED PUBLIC POLICY.

Massachusetts courts have construed the public policy exception narrowly, acknowledging that to do otherwise would convert the general rule of at-will employment into a rule that requires just cause to discharge an employee. *King*, 418 Mass. at 582. An employee's discharge is contrary to public policy only if it is the result of: (1) the employee's assertion of a legally guaranteed right; (2) the employee's doing what the law requires; (3) the employee's refusal to do what the law forbids;

or (4) an employee's internal or external report of suspected criminal activity. *Upton v. JWP Businessland.*, 425 Mass. 756, 757 (1997). Susienka and Phaneuf premise their claim of wrongful discharge in violation of public policy upon UPS's alleged discharge of them in retaliation for their refusal to provide UPS with a signed statement containing false information about co-workers. (Complaint ¶¶ 41-42, 48-49). Such allegations do not fall within the narrow range of public policy exceptions.

The Supreme Judicial Court has held that discharging an employee for performing appropriate and socially desirable duties does not constitute wrongful discharge in violation of public policy. *Smith-Pfeffer v. Fernald State School*, 404 Mass. 145, 150-51 (1989) (plaintiff's discharge for criticizing quality of care rendered to mentally handicapped residents of school does not violate public policy); *Raffaele v. Ryder Dedicated Logistics, Inc.*, 931 F. Supp. 76, 80 (D. Mass. 1996) (truck driver's alleged discharge for roadside stop to assist troubled motorist does not violate public policy).

In *Wright v. Shriners' Hospital*, 412 Mass. 469 (1992), for example, a nurse alleged she was discharged as a result of her criticism to the hospital's national headquarters survey team regarding inadequate patient care at the hospital. *Id.* at 472. The Supreme Judicial Court rejected plaintiff's claim for wrongful discharge, holding that plaintiff's criticisms regarding patient care at the hospital, while perhaps appropriate and socially desirable, did not implicate any well-defined public policy. *Id.* at 475-76. The court rejected state laws requiring reports on patient abuse as a possible source of a clear and well-established public policy because plaintiff's reports regarding patient care did not rise to the level of a required report of patient abuse, neglect, or mistreatment. *Id.* at 473-74. The court also rejected state nursing regulations as possible sources of a public policy, implying that without a statutory basis there could be no well-defined public policy. *Id.* at 473-74.

Similar to the plaintiff in *Wright*, plaintiffs can point to no statute that either protects or mandates the conduct – refusing to provide internal false statements about co-workers – for which they allege UPS discharged them.[2] At most, plaintiffs' alleged conduct falls within the category of socially desirable and appropriate conduct, which is insufficient to form the basis for a claim of wrongful discharge in violation of public policy. *See Wright*, 412 Mass. at 473-76. Plaintiffs' allegations concern a purely internal UPS matter and, as such, cannot form the basis for a valid public policy claim. *See King v. Driscoll*, 418 Mass. 576, 583 (1994) ("the internal administration, policy, functioning, and other matters of an organization cannot be the basis for a public policy exception to the general rule that at-will employees are terminable at any time with or without cause").

IV.  PLAINTIFFS' CLAIMS UNDER THE MASSACHUSETTS CIVIL RIGHTS ACT, G.L. c. 12, § 11I, FAIL BECAUSE THEY ARE BASED SOLELY ON A THEORY OF *RESPONDEAT SUPERIOR*.

Plaintiffs' MCRA claim against UPS is based entirely on the alleged unlawful conduct of other UPS employees. (Complaint ¶¶ 211, 214) (UPS "through the actions and/or inactions of its employees, servants and/or agents . . . unlawfully interfered by means of threats, intimidation and coercion" with plaintiffs' exercise and/or enjoyment of rights secured by law in violation of MCRA). Plaintiffs cannot, however, predicate a MCRA claim against their former employer on a theory of respondeat superior. *Lyons v. National Car Rental Sys., Inc.*, 30 F.3d 240, 247 (1st Cir. 1994) ("claims against employers under the MCRA cannot rest on the doctrine of respondeat superior"); *French v. United Parcel Service, Inc.*, 2 F. Supp. 2d 128, 133 (D. Mass. 1998). UPS is not liable

---

[2] It is important to note that unlike the plaintiffs in *DeRose v. Putnam Mgt. Co.*, 398 Mass. 205, 210 (1986), plaintiffs do not allege that UPS discharged them for their refusal to lie in a court proceeding.

under MCRA for the alleged threats, intimidation or coercion of its employees, and therefore, plaintiffs' MCRA claims should be dismissed.

### Conclusion

For the reasons stated above, UPS requests that this Court dismiss plaintiffs' claims against UPS for breach of the implied covenant of good faith and fair dealing, wrongful termination in violation of public policy, and violation of the Massachusetts Civil Rights Act.

UNITED PARCEL SERVICE, INC.,

By its attorneys,

*Christa vd Luft*
Augustus F. Wagner, Jr. (BBO#511780)
Nelson G. Apjohn (BBO#020373)
Christa von der Luft (BBO#600362)
Nutter, McClennen & Fish, LLP
One International Place
Boston, MA 02110-2699
(617) 439-2000

Dated: March 30, 1999
720982.1

### CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand

Date: 3/30/99          *Cvd Luft*

7